FOURTH DIVISION

November 17, 2005

1-04-2614

CLARENCE P. BANGERT, THOMAS J. BEELER, ) Appeal from the

JAMES CHAPMAN, WILLIAM EK, BEAT J. ) Circuit Court of

JENNI, RONALD J. JENSEN, WAYNE E. JONES ) Cook County. 

DENNIS KOSTER, JAMES R. MAURICE, MARTHA )

MYERS, Executrix of the Estate of     )

DAVID F. MYERS, KEITH A. POPE, ELAINE )

POTTER, Executrix of the Estate of )

MICHAEL M. POTTER, SR., ROBERT RANDOLPH,)

SHERWOOD RICHARDSON, EDGAR ROSE, EDWARD )

J. SCHROEDTER, CHARLES D. STRANG, JR., )

and SAMUEL WINETT, )

)

Plaintiffs-Appellants, )

)

v. ) 

)

THE NORTHERN TRUST COMPANY, ) Honorable

) Barbara J. Disko,

Defendant-Appellee.          ) Judge Presiding.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiffs Clarence P. Bangert, Thomas J. Beeler, James Chapman, William Ek, Beat J. Jenni,
(footnote: 1) Ronald J. Jensen, Wayne E. Jones, Dennis Koster, James R. Maurice, Martha Myers, executrix of the estate of David F. Myers, Keith A. Pope, Elaine Potter, executrix of the estate of Michael M. Potter, Sr., Robert Randolph,

Sherwood Richardson, Edgar Rose, Edward J. Schroedter, Charles D. Strang, Jr., and Samuel Winett, 
are former elected officers of the Outboard Marine Corporation (OMC), "a leading worldwide manufacturer of pleasure boats and outboard marine engines."  Plaintiffs appeal from the order of the circuit court granting summary judgment (735 ILCS 5/2-1005 (West 2002)), to defendant Northern Trust Company (Northern Trust).  For the following reasons, we affirm.    

BACKGROUND

In order to provide for themselves in retirement, executives of OMC developed a supplemental employee retirement plan (SERP) that provided monthly benefit payments to certain retired officers.  In 1987, OMC created a trust, later amended in 1989, to house the monies to pay these SERP benefits.  To ensure that these benefits would be paid even in the event of a change in control at OMC, the trust agreement contained a provision requiring OMC to fully fund the trust with a sufficient amount to pay the promised benefits once a change in control occurred.  The trust agreement also provided that the entire trust corpus would remain "subject to the claims of the general creditors" of OMC and that, in the event OMC should declare bankruptcy, the trustee would deliver the entire trust corpus to the bankruptcy court.  Defendant Northern Trust Company (Northern Trust) was selected as the trustee.  

In 1997, OMC was acquired by Greenmarine Holdings, L.L.C., and, pursuant to the trust’s "full funding" provision, OMC deposited nearly $13.8 million in cash into the trust.  Soon thereafter, OMC replaced the 13.8 million in cash with an "IOU" in the form of a letter of credit issued by another bank in OMC's name. 

Also in 1997, plaintiffs formed a group known as the "OMC Ex-Officer Group" to ensure that "the Trust would remain fully funded and that both OMC and [Northern Trust] comply with its terms." Though they continued to receive their monthly SERP benefits on time, in late 1999 and early 2000, plaintiffs became concerned about OMC’s solvency and its future ability to make the monthly SERP payments, so they contacted OMC about the prospect of its members opting for a "lump sum" benefit payment pursuant to section 4.02 of the amended trust, which stated as follows:

"SECTION 4.02 
Deliveries to Participants
.  Subject to section 4.01, the Trustee shall hold the Trust Corpus in its possession under the provisions of this Trust until directed by an Executive and/or Participant pursuant to a written notice (the ‘Executive’s Notice and Affidavit’), in a form substantially similar to that attached hereto as Exhibit V, to pay all or a portion of the amounts allocated to such Executive and/or Participant under the Trust as specified in Exhibits IVA, IVB and IVC and pursuant to the terms and conditions of the schedules, as the case may be."      

Plaintiffs also inquired as to why two members of the OMC Ex-Officer Group, William Ek and Sherwood Richardson, were not listed by OMC as beneficiaries of the trust.  OMC suggested that plaintiffs contact Northern Trust.     

After several months of failing to initiate a dialogue with Northern Trust, plaintiffs received a letter from Northern Trust’s vice president and trust administrator, Eva Bernacki, which stated that she was unable to address their questions.  The letter further informed them that "as trustee of the Trust, [Northern Trust’s] relationship is with [OMC] rather than with the individual plan participants."  

In September 2000, plaintiffs’ counsel sent a letter to OMC and Northern Trust suggesting that some plaintiffs might seek lump-sum payments pursuant to section 4.02 of the trust agreement.  On September 8, 2000, OMC’s general counsel responded by sending a letter to Northern Trust stating its position on the propriety of any lump-sum payments:

"OMC wants you to be aware that, in its view, none of the beneficiaries of the Trust Agreement are entitled to current lump sum payments of benefits under any of the underlying plans and arrangements funded under the trust.

Accordingly, OMC would object strenuously to the payment of any amounts out of the trust to any beneficiary purporting to claim entitlement to a lump sum payment and would pursue any legal remedy it may have in the event of such erroneous and unauthorized payment."

Sensing trouble, Northern Trust sent a letter to both OMC and plaintiffs’ counsel noting "[t]he conflicting positions of [plaintiffs] and OMC with respect to the proper interpretation of the payment and other provisions of the Trust" and lamenting the "untenable position" it was being put in as a result.  According to that letter, Northern Trust informed OMC and plaintiffs that if they could not resolve their differences as soon as possible, Northern Trust would file a demand for arbitration pursuant to section 7.03 of the trust.  

On November 3, 2000, one of the plaintiffs, James Maurice, submitted an "Exhibit V" affidavit to Northern Trust requesting a lump-sum payment of over $340,000.  True to its word, on November 6, 2000, Northern Trust filed a verified petition for trust construction and instructions, and for emergency relief in the circuit court.  

In its petition, Northern Trust noted that plaintiff Maurice had made a demand for a lump-sum payment under the trust and that OMC disputed his right to that payment.  Based upon the "actual controversy between OMC and Maurice with respect to their rights under the Trust," Northern Trust sought "construction of the Trust provisions bearing on the rights of the Participants (including Maurice) and OMC with respect to payments" under the trust and a "declaration of those rights and instructions to [Northern Trust], as Trustee, with respect to any such payments."  Northern Trust further sought a declaration as to whether the "dispute" between plaintiffs and OMC fell within the trust’s arbitration provision.  Finally, Northern Trust sought "the entry of an emergency order directing that until such time as the rights of the parties with respect to payment are resolved, either in this proceeding or in arbitration, [Northern Trust] is under no obligation to, and shall not, make such payment."

On November 13, 2000, the circuit court granted Northern Trust’s request for emergency relief (characterized by Northern Trust as an "injunction" in its brief), and issued an order stating that Northern Trust "is not obligated to, and is directed not to" draw on the letter of credit or "make such payments in any other manner from the Trust, until further order of this Court."  Three days after the circuit court entered this order, on November 16, 2000, 13 additional plaintiffs filed Exhibit V affidavits, seeking lump-sum payments.  Later, on December 5, 2000, another plaintiff (the fifteenth 
to do so), filed an Exhibit V affidavit.  

On December 15, 2000, plaintiffs filed a motion to have Northern Trust draw on OMC's letter of credit and deposit with the court an amount equal to the total of their requested lump- sum payments.  On December 20, 2000, the circuit court denied plaintiffs’ request and ordered the parties to begin arbitration within 30 days.  Two days later, on December 22, 2000, OMC filed for bankruptcy and the proceeding in the circuit court was automatically stayed.  The bankruptcy court ordered plaintiffs’ monthly SERP benefits suspended and, pursuant to the terms of the trust, the entire trust corpus was transferred to the bankruptcy trustee.

In February 2001, plaintiffs filed a two-count complaint against Northern Trust for breach of fiduciary duty and breach of the trust agreement.
  In their complaint, plaintiffs alleged that OMC had wrongfully objected to their request for lump-sum payments "for the purpose of protecting its own financial situation," despite their "clear right" to such payments under section 4.02 of the trust.  Because of the ongoing business relationship between OMC and Northern Trust, plaintiffs averred, Northern Trust "capitulated" to OMC’s objections and filed its petition for instructions "for the benefit of OMC and as a pretext to avoid SERP payments."   

Specifically, plaintiffs alleged Northern Trust breached its fiduciary duty to them by (1) failing to advise them of their right to receive a lump-sum payment; (2) "assuming a relationship only with and for the benefit of its paying customer," OMC; (3) refusing to pay plaintiffs lump-sum payments despite the "clear language" of section 4.02 of the trust; (4) qualifying any lump- sum payment on OMC withdrawing its objection; and (5) failing to add plaintiffs Ek and Metcalf on the list of named beneficiaries.

After the parties filed cross-motions for summary judgment, the circuit court granted Northern Trust’s motion for summary judgment and denied plaintiffs’ motion.  In a written order, the circuit court found that Northern Trust had not breached its fiduciary duty to plaintiffs.  Plaintiffs filed a timely notice of appeal.

ANALYSIS

On appeal, plaintiffs argue that the circuit court erred in granting Northern Trust’s motion for summary judgment on their claim of breach of fiduciary duty.
(footnote: 2)  According to plaintiffs, their right to lump-sum payments was "clear and uncontested" under the plain language of section 4.02 of the trust.  Thus, they claim that Northern Trust breached its fiduciary duty to them by (1) refusing their demand for such payments and (2) seeking judicial instruction about its obligation to make such payments without a 
bona
 
fide
 reason to do so.  In essence, plaintiffs contend that Northern Trust knew OMC's threat to sue if Northern Trust tendered the lump-sum payments was a bluff, and its decision to seek judicial instructions was a sham, designed to delay those payments from the trust.  Plaintiffs also argue that Northern Trust breached its duty to plaintiffs Ek and Metcalf by failing to include them as trust beneficiaries by "updat[ing] the trust beneficiary list as required under its terms."    

Northern Trust contends that the circuit court’s order barring it from making any payments "until further order of court" provides it a safe harbor from liability.  Northern Trust also argues that it had reasonable grounds to seek judicial instruction as to whether it should make any lump-sum payments in light of OMC’s objections to such payments; there was no evidence that its motivation to seek such instruction was to appease OMC and keep its business; and it had no power under the terms of the trust agreement to add Ek, Metcalf, or anyone else to the list of trust beneficiaries.  

Summary judgement is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2002).  When the parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law.  
Steadfast Insurance Co. v. Caremark RX Inc.
, No. 1-04-3423, slip op. at 4 (August 17, 2005).  We review an order granting summary judgment 
de novo
.  
Morris v. Margulis
, 197 Ill. 2d 28, 35 (2001). 

A fiduciary must deal impartially with all beneficiaries and protect their interests.  
Northern Trust Co. v. Heuer
, 202 Ill. App. 3d 1066, 1070 (1990).  As such, a trustee owes the highest duty to his beneficiary to fully and completely disclose all material facts relating to dealings under the trust.  
Regnery v. Meyers
, 287 Ill. App. 3d 354, 363 (1997).  To state a claim for breach of fiduciary duty, a plaintiff must allege that (1) a fiduciary duty exists; (2) that duty was breached; and (3) the plaintiff's injuries were proximately caused by that breach.  See 
International Capital Corp. v. Moyer
, 347 Ill. App. 3d 116, 122 (2004); 
Prime Leasing, Inc. v. Kendig
, 332 Ill. App. 3d 300 (2002).  
 
     

In arguing that the circuit court's grant of summary judgment on plaintiffs' breach of fiduciary duty claim was proper, Northern Trust relies heavily on the fact that the circuit court had barred it from making any payments under the trust until further order of the court.  Northern Trust maintains that this order provides it with a safe harbor from plaintiffs' claims of breach of fiduciary duty, 
i.e.
, since it was merely following the court's order when it refused to provide plaintiffs with the lump sum payments they sought, it cannot be found to have breached its fiduciary duty to them.  

Northern Trust is certainly on good footing for arguing that it cannot be held accountable for losses that occurred after and as a direct result of the circuit court's order.  First, 
section 5.01(b) of the trust agreement states that, as trustee, Northern Trust will not be held liable "[i]f all or any part of the Trust Corpus is at any time attached, garnished, or levied by any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order."
  

Second, it is well established that a party cannot be held liable for abiding by a court order. See 
In re Marriage of Nettleton
, 348 Ill. App. 3d 961, 970 (2004) ("No matter how erroneous, a trial court's order made within the proper exercise of jurisdiction must be obeyed until the order is modified or set aside by the trial court or reversed on appeal"), citing 
Cummings-Landau Laundry Machinery Co. v. Koplin
, 386 Ill. 368, 385 (1944) ("The principle is of universal force that the order or judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be erroneous").  Thus, Northern Trust cannot be held accountable for the failure to make lump-sum payments to those plaintiffs who waited to file their affidavits seeking such payments
 until after the circuit court entered the injunction.  Had Northern Trust granted their requests, it would have been in direct violation of the circuit court's order.

The entry of that order, however, does not provide Northern Trust with a complete defense to plaintiffs' breach of fiduciary duty claim.  While part of plaintiffs' theory of breach rested upon Northern Trust's failure to process their lump-sum payment requests, plaintiffs' main allegation concerned Northern Trust’s very decision to file the petition for instructions and seek an injunction in the first place.

It is a well-settled right of a trustee that " '[w]herever there is any 
bona fide
 doubt as to the true meaning and intent of the provisions of the instrument creating the trust or as to the particular course which he ought to pursue, the trustee is always entitled to maintain a suit in equity at the expense of the trust estate and obtain a judicial construction of the instrument and directions as to his own conduct.' " 
Warner v. Mettler
, 260 Ill. 416, 420 (1913), quoting 3 Pomeroy’s Eq. Jur. § 1064; see also 
Heuer
, 202 Ill. App. 3d at 1070-71 (stating that "[w]hee there are conflicting claims to trust funds, a trustee is not required to make a determination as to the rights of the prospective claimants but should file an interpleader action to avoid acting at its own peril"); 
Comtrade, Inc. v. First National Bank of Highland Park
, 146 Ill. App. 3d 1069, 1073-74 (1986) (same); 
Chicago Title & Trust Co. v. Czubak
, 42 Ill. App. 3d 349 (1976) (same); 
Franks v. North Shore Farms, Inc.
, 115 Ill. App. 2d 57 (1969) (same).  "Courts of equity will not only compel the performance of the trust, but they 'will assist the trustees and protect them in the due performance of the trust whenever they seek the aid and direction of the court as to the establishment, the management or the execution of it.' "  
Warner
, 260 Ill. at 420, quoting 2 Story's Eq. Jur. 
§ 961. 

Section 259 of the Restatement (Second) of Trusts states that "[t]he trustee is entitled to apply to the court for instructions as to the administration of the trust if there is reasonable doubt as to his duties or powers as trustee."  Restatement (Second) of Trusts §259, at 654 (1959).  According to comment 
a
:

"The trustee is entitled to instructions of the court in respect to such matters as the proper construction of the trust instrument, the extent of his powers and duties, who are beneficiaries of the trust, the character and extent of their interests, the allocation or apportionment of receipts or expenditures between principal and income, the persons entitled to the income or to the trust property on the termination of the trust."  Restatement (Second) of Trusts §259, Comment 
a
, at 654 (1959).

The trustee is not entitled to instructions "unless there is a reasonable doubt as to the extent of his powers or duties."  Restatement (Second) of Trusts §259, Comment 
b
, at 654 (1959).  For instance, the courts will not instruct the trustee "as to the distribution of the trust property before the time for distribution arrives" (Restatement (Second) of Trusts §259, Comment 
c
, at 655 (1959)), or "[w]here a matter rests within the discretion of the trustee" (Restatement (Second) of Trusts §259, Comment 
d
, at 655 (1959)).
 

Likewise, a "tentative draft" of the Restatement (Third) of Trusts, section 71, reaffirms this well-settled right of a trustee to seek judicial guidance discussed above: "A trustee or beneficiary may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions."  Restatement (Third) of Trusts § 71 (Tentative Draft) (2005).
(footnote: 3)  Comment 
d
 to that section discusses those "[m]atters about which instructions are not appropriate[:]"

"Because of concern regarding burdens on the judicial system and unwarranted costs and delays in trust administration, a trustee or beneficiary normally is not entitled to instructions with respect to the administration of a trust unless there is some reasonable doubt about the extent of the trustee's powers or duties or about proper interpretation of the trust provisions.  Nor will the court instruct the trustee as to a question that may never arise, or that may arise only in the future, unless some need is shown for current resolution of the matter.  Thus, a court ordinarily will not instruct a trustee on the distribution of trust property before the time arrives for making, or at least planning, that distribution.

If a matter rests within the sound discretion of the trustee, or is a matter of business judgment, the court ordinarily will not instruct the trustee how to exercise that discretion or judgment. ***

As a qualification upon the rule of this Comment, a court may be justified in accepting as 'reasonable' doubt or uncertainty a trustee's legitimate concern that a particular beneficiary's insistence upon an unreasonable position might, without instruction on the matter, lead to significantly more costly and disruptive litigation."   Restatement (Third) of Trusts § 71, Comment 
d
 (Tentative Draft) (2005). 

Though they quarrel over the type of trust OMC created for its retired executives, 
i.e., 
"rabbi," "secular," or otherwise,
 the parties apparently conceded during oral argument before the circuit court on their cross-motions for summary judgment that the "central issue" to plaintiffs’ breach of fiduciary duty claim is whether Northern Trust was justified in seeking judicial instruction on the question of whether the beneficiaries of the OMC trust could properly receive lump-sum payments.  The answer to this question does not depend upon how the OMC trust is legally characterized
 or whether plaintiffs were actually entitled to those payments.  Instead, it depends upon whether the doubt in Northern Trust's mind as to how it was to proceed was 
bona fide
.

Plaintiffs recognize the right of a trustee to seek judicial instruction, but, offering no cases in support of their argument, contend that Northern Trust had no 
bona fide
 reason to seek those instructions and that Northern Trust’s motive in filing the petition was to do whatever it could to avoid payment and stay in OMC’s good graces.  Though it is plausible that a trustee could breach its fiduciary duty by filing a petition for instructions without a 
bona fide
 reason to do so (see, 
e.g.
, 
Narin v. Stemmler
, 17 Ill. App. 3d 1060 (1974) (abstract of decision) (finding trustee was not entitled to seek judicial instructions because the trust provision at issue was clear and unambiguous); see also 
United States v. Mason
, 412 U.S. 391, 400, 37 L. Ed. 2d 22, 29, 
93 S. Ct. 2202, 2208 (1973) (declining to hold "that a fiduciary may never be held liable for reliance on prior decisions" of the Supreme Court)), plaintiffs have not shown that to be the case here.     

In this case, Northern Trust filed its petition for instructions the day after plaintiff Maurice filed his Exhibit V affidavit seeking a lump-sum payment and asserted it did so because OMC disputed plaintiff Maurice's right to a lump-sum payment under section 4.02 and threatened to sue Northern Trust if it made that payment.  Though nowhere in its petition for instructions did Northern Trust cite to any trust provision(s) that would contradict or oppose Maurice's claim of a right to a lump-sum payment under section 4.02 (it appears that Northern Trust simply based its 
bona
 
fide
 doubt as to whether such payments were permitted under the trust upon OMC's say so
), it is undeniable that (1) OMC and plaintiffs disagreed as to the propriety of lump-sum payments under the terms of the trust and (2) OMC threatened Northern Trust with a lawsuit should it grant plaintiffs' demands for those payments. 
 See 
Dunne v. Cooke
, 197 Ill. App. 422, 439 (1916) (finding trustee properly sought judicial instructions where there was "sharp conflict *** between the heirs and the trustees" over the terms of the trust); see also
 Restatement (Third) of Trusts § 71, Comment d (Tentative Draft) (2005) (stating that a
 "reasonable" doubt can arise (and, thus, the right of a trustee to seek judicial instruction) where "a particular beneficiary's insistence upon an unreasonable position might, without instruction on the matter, lead to significantly more costly and disruptive litigation"). 
 
  

In addition to citing no cases in support of their argument that Northern Trust lacked a 
bona fide
 justification for seeking judicial instructions, plaintiffs have offered little evidence to show that Northern Trust believed plaintiffs had a clear right under the trust to lump-sum payments, and instead filed its petition in order to protect its relationship with OMC.  While the letter sent by Northern Trust's vice president, Eva Bernacki, informing plaintiffs that Northern Trust's "relationship as trustee" was "with [OMC] rather than with the individual plan participants," evidences a troubling misunderstanding as to with whom Northern Trust's duty of undivided loyal lay (see 
Regnery
, 287 Ill. App. 3d at 363 (stating that
 a trustee owes the highest duty to his beneficiary to fully and completely disclose all material facts relating to dealings under the trust))
, her deposition does not show in any way that Northern Trust held the opinion that plaintiffs had an unqualified right to lump-sum payments.  

Plaintiffs argue that Bernacki "admitted" that the words "lump sum" meant "present value"; an admission which they argue was tantamount to agreeing that such lump-sum payments were permitted under the trust.  This argument fails for two reasons.  First, the words "lump sum" appear nowhere in the trust agreement.  Section 4.02, the section of the trust that plaintiffs claim provided a right to lump-sum payments, merely states that upon receipt of an Exhibit V affidavit, Northern Trust is to pay "all or a portion of the amounts allocated to such Executive and/or Participant under the Trust as specified in Exhibits IVA, IVB and IVC and pursuant to the terms and conditions of the schedules, as the case may be."  Second, in the so-called "admission" upon which plaintiffs rely, Bernacki was simply stating the economic principle of present value, 
i.e.
, that where an individual is entitled to either periodic payments or a lump-sum payment, the amount of a lump-sum payment is equivalent to the present value of the total of those payments.  

As stated above, the key question underlying plaintiffs' breach of fiduciary duty claim is not whether they actually had a right to lump-sum payments (the answer to which would require a judicial interpretation of the trust agreement), but whether Northern Trust had a 
bona fide 
or reasonable doubt as to whether that right existed.  Plaintiffs have offered nothing more than inferences and conjecture to support their argument that Northern Trust had no such doubt and, instead, wrongfully colluded with OMC to keep those payments from them.  In light of the well-settled right of a trustee to seek judicial instruction when a 
bona fide
 doubt exists as to its obligations under the trust, the conflicting opinions of plaintiffs and OMC as to the propriety of lump-sum payments under the trust, and OMC's threat to sue if such payments were made, we find that Northern Trust's doubt as to how it was to proceed was 
bona fide
, and its decision to seek judicial instruction was proper.  See 
Dunne
, 197 Ill. App. at 439 (finding trustee properly sought judicial instructions where there was "sharp conflict *** between the heirs and the trustees" over the terms of the trust).
 

Finally, we reject plaintiffs' argument that Northern Trust breached its fiduciary duties to plaintiffs Ek and Metcalf for failing to include them in the list of beneficiaries to the OMC trust.  Both plaintiffs and Northern Trust agree that a trustee "must look to the terms of the instrument itself for the determination of his duties" (
Martin v. Rockford Trust Co.
, 281 Ill. App. 441, 445 (1935)), and
 that a trustee has "no right to perform any acts extraneous to his trust or beyond his authority" (
Martin
, 281 Ill. App. at 445).

As plaintiffs concede, it was OMC's duty to provide that list (known as Schedule B-1) to Northern Trust and 
there is no provision in the trust that empowers Northern Trust to amend the list of beneficiaries provided by OMC.   Therefore, Northern Trust could not have added Ek and Metcalf without performing an act "extraneous" to its powers under the trust agreement.  

Affirmed.

CAMPBELL and GREIMAN, JJ., concur

FOOTNOTES
1: Mr. Jenni moved to dismiss himself from this appeal, which this court allowed on February 28, 2005.

2: 
Plaintiffs did not appeal the grant of summary judgment on their breach of trust agreement claim
.

3:
As of the date of this opinion, this "tentative draft" of the Restatement (Third) of Trusts, section 71, has been "tentatively approved" by the American Law Institute.