In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-4141

ESTATE OF ANTHONY J. TAMULIS,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

———————

Appeal from the United States Tax Court.
No. 20721-03.

———————

ARGUED OCTOBER 26, 2007—DECIDED NOVEMBER 29, 2007

———————

Before POSNER, FLAUM, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal involves the tax treatment of a charitable remainder trust—a trust in which the income goes to individuals during their lifetime (or some other period) but what remains after their rights expire goes to charity. Until 1969 the estimated present value of the remainder was what was deductible from the federal estate tax. But that year, concerned that the trustee might invest the trust's assets in a way calculated to maximize current income, with the result that when finally received by the charity the remainder would be worth less than the estimated actuarial value on which

the deduction from estate tax had been based, Congress provided (so far as bears on the present case) that to obtain the deduction the settlor would have to create the trust in the form of a "charitable remainder unitrust." This is a trust in which no more than a specified percentage of the fair market value of the trust's assets (as determined each year), for a specified period, can go to the noncharitable beneficiaries; the rest belongs to a charity or charities designated in the trust. 26 U.S.C. § 664(d)(2).

Congress later created a safety valve by providing that a charitable remainder trust that was not in the unitrust form could, if changed to that form, qualify for the deduction. But if the change that would be required to do this would not just be the correction of some merely technical error in the original trust instrument, then "a judicial proceeding [must be] commenced to change [into the unitrust form any interest for which the charitable deduction would be allowable were the trust a unitrust] not later than the 90th day after—(1) if an estate tax return is required to be filed, the last date (including extensions) for filing such return." 26 U.S.C. § 2055(e)(3)(C)(iii).

Father Tamulis, a Catholic priest, died in 2000, leaving an estate of $3.4 million. His will left the bulk of his estate to a living trust that he had created. The trust was to continue for the longer of 10 years or the joint lives of Tamulis's brother and the brother's wife. During that period they would have a life estate in a house owned by the trust and the trust would pay the real estate taxes on the house. The net income of the trust, as "determined in accordance with normal accounting principles," would go to two of the brother's and sister-in-law's grandchildren (that is, Tamulis's grandnieces), minus $10,000 a year, which would go to their third child until she graduated

from medical school. Upon the termination of the trust the assets would pass to a Catholic diocese.

The estate tax return, filed in 2001, claimed a charitable deduction of $1.5 million, represented to be the present value of the charitable remainder, which was described on the return as the "residue following 10 year term certain charitable remainder unitrust at 5% quarterly payments to two grand nieces." In each of the years 2001 through 2004, the trust distributed no more than 5 percent of the fair market value of the trust's assets, as valued at the beginning of each year, to the grandnieces and for the payment of the real estate taxes on their parents' home. The Internal Revenue Service refused to allow the charitable deduction. The charitable remainder, as defined in the trust instrument, was not a charitable remainder unitrust as defined in the Internal Revenue Code. In particular, the trust instrument did not specify either a fixed dollar amount, or the percentage of the trust's fair market value, that would go to the income beneficiaries—to the grandnieces in cash and to their parents in the form of a life estate in the house and payment of the real estate taxes on it, which would be paid out of the trust's income. This was a fundamental defect, corrigible only by a judicial proceeding to reform the trust, filed within 90 days after the estate tax return was due.

The trustee (who was also the executor of Father Tamulis's will) and the diocese realized that there was a problem. But more than eight months elapsed before the executor prepared a complaint to file in an Illinois state court (the trust is governed by Illinois law) to reform the trust. And for unexplained reasons the complaint was never filed. Instead, in 2003 the executor circulated to the income beneficiaries a proposed reformation of the

trust to bring it into compliance with the Code. But the third grandniece did not sign it, and so the trust has never been reformed, with or without a judicial proceeding, although the trustee continues to administer it in accordance with the requirements of the Code, as her predecessor (the original trustee, who has died) had said in the estate tax return that he was doing. Her argument, rejected by the Tax Court and renewed before us, is that the statement in the return, coupled with the trustee's continued administration of the trust as if it were a qualified unitrust, should be deemed substantial compliance with the Code, although she concedes that it is not literal compliance.

There is a doctrine of substantial compliance with the often intricate and obscure provisions of the Internal Revenue Code. We have criticized the Tax Court's articulation of the doctrine for formlessness, and, noting that the courts of appeals do not defer to the legal rulings of that court any more than they do to the rulings of a district court, have ruled that the "doctrine of substantial compliance should not be allowed to spread beyond cases in which the taxpayer had a good excuse (though not a legal justification) for failing to comply with either an unimportant requirement or one unclearly or confusingly stated in the regulations or the statute." *Prussner v. United States*, 896 F.2d 218, 224 (7th Cir. 1990) (en banc); see also *Volvo Trucks of North America, Inc. v. United States*, 367 F.3d 204, 209-10 (4th Cir. 2004); *Estate of Hudgins v. Commissioner*, 57 F.3d 1393, 1404-05 (5th Cir. 1995). Tamulis's charitable remainder trust flunks this test. The executor-trustee, represented by counsel, as he was, and well aware that a substantial tax deduction was at stake, had no excuse for failing to bring the required judicial

proceeding to reform the trust. The requirement is not unimportant; it protects against efforts to bend trust law to get a tax benefit. Nor is the requirement stated unclearly or confusingly in the Code or in any regulation—it is perfectly clear. Until the trust was reformed, compliance with the spirit of the Code's provisions dealing with charitable remainder trusts had depended largely on the good faith of the trustee; had Congress thought this enough it would not have amended the Code as it did in 1969.

Nor can the trustee get mileage from the fact that the deduction for a charitable remainder unitrust is made to depend on the taxpayer's being able to obtain a remedy from a state court (in this case, an Illinois state court). It is true that in all likelihood she could not have not obtained the remedy from a federal court. The "probate exception" to federal jurisdiction, on which see, e.g., *Marshall v. Marshall*, 547 U.S. 293 (2006); *Struck v. Cook County Public Guardian*, No. 07-2420, 2007 WL 4145845 (7th Cir. Nov. 26, 2007); *Jones v. Brennan*, 465 F.3d 304 (7th Cir. 2006), would doubtless bar the way; perhaps Article III of the Constitution, as well. For under Illinois law the reformation of a trust to take advantage of the charitable remainder deduction requires unanimous consent of the beneficiaries, Charitable Trust Tax Law Conformance Act, 760 ILCS 60/1(2); *In re Estate of Bishop*, 468 N.E.2d 506 (Ill. App. 1984), and the trustee who seeks reformation in a judicial proceeding is thus not suing anyone. So there would be no case or controversy within the meaning of Article III unless the Internal Revenue Service intervened to oppose the reformation in order to thwart the charitable deduction and by doing so converted the proceeding to an adversary one and thus a case or contro-

versy. (The Tax Court is not an Article III court, but it has not been authorized to reform wills or trusts.)

Even if, no federal forum being available, the state whose law governed the trust did not authorize a proceeding to convert a charitable remainder trust to a charitable remainder unitrust, that omission—though closing the only path to qualifying for the deduction—would deprive the state's residents of the federal tax benefit. Congress has made the benefit dependent on state law, and there is no doubt of its power to do so. Nothing is more common than for tax benefits to depend on state law; a state that does not permit 14-year-olds to marry deprives them of access to the benefits of filing a joint return. But Illinois law *does* authorize a judicial proceeding to reform a will, e.g., *Bangert v. Northern Trust Co.*, 839 N.E.2d 640, 646-47 (Ill. App. 2005); *In re Estate of Bishop*, *supra*, 468 N.E.2d at 506, as indeed, as far as we know, every other state does. See *Restatement (Second) of Trusts* § 259 and comment a (1959). So there was nothing to prevent the trustee from bringing the trust into compliance with the requirements of the Internal Revenue Code for obtaining the charitable remainder deduction—except that, as we mentioned, Illinois does not allow a trust to be reformed for purposes of qualifying for the deduction unless all the beneficiaries of the trust consent. This is a significant protection for trust beneficiaries (though it could give rise to high transaction costs, given the power of holdouts in any situation in which unanimity is required for action, not to mention complications introduced when beneficiaries are minors or unborn), especially in this case, where no judicial proceeding to reform the trust was instituted. Neither the (federal) requirement of filing a state judicial proceeding if the state permits, nor the (state) requirement of unani-

mous consent of beneficiaries, can be deemed unimportant or unclear, and therefore the doctrine of substantial compliance cannot be used to excuse a failure to comply with them.

When the conditions for applying the doctrine are not satisfied, it makes compellingly good sense to hold a taxpayer to the requirements of the tax code, as the courts have held in cases comparable to this one, e.g., *Bartlett v. Commissioner*, 937 F.2d 316, 321-22 (7th Cir. 1991); *Estate of Hudgins v. Commissioner*, *supra*, 57 F.3d at 1404-05; *In re Estate of Lucas*, 97 F.3d 1401, 1404-08 (11th Cir. 1996); *Credit Life Ins. Co. v. United States*, 948 F.2d 723, 726-28 (Fed. Cir. 1991), although they do not involve charitable remainder trusts. The doctrine of substantial compliance "seek[s] to preserve the need to comply strictly with regulatory requirements that are important to the tax collection scheme and to forgive noncompliance for either unimportant and tangential requirements or requirements that are so confusingly written that a good faith effort at compliance should be accepted." *Volvo Trucks of North America, Inc. v. United States*, *supra*, 367 F.3d at 210; see generally Michael B. Lang & Colleen A. Khoury, *Federal Tax Elections* § 2.26 (1991, and 1996 Cum. Supp.). The doctrine is therefore inapplicable to this case.

AFFIRMED.

A true Copy:

     Teste:

                                _____

                                *Clerk of the United States Court of Appeals for the Seventh Circuit*