NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted July 20, 2012[*]
Decided July 24, 2012

### Before

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 11-3485 | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| MARGARET BACH, *Plaintiff-Appellant*, | |
| *v.* | No. 11-C-828 |
| MILWAUKEE COUNTY, *et al.*, *Defendants-Appellees*. | C.N. Clevert, Jr., *Chief Judge*. |

### Order

Margaret Bach sued on behalf of herself and her son Aaron, a disabled adult. She seeks to regain custody of her son and to receive damages on account of his confinement at a Milwaukee County facility for several days in July 2011. The district court abstained from addressing her challenge to the state court's order appointing ARC of Greater Milwaukee (which changed its name to Life Navigators last January) as Aaron's guardian, and dismissed the suit as a whole because only Aaron's guardian can decide whether to litigate on his behalf.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

Aaron needs 24-hour supervision. When he turned 18, a circuit court in Wisconsin appointed Margaret as his guardian. In 2009 the court replaced Margaret with Life Navigators as Aaron's guardian and appointed Elizabeth Ruthmansdorfer as his guardian ad litem. In 2010 the court ordered Aaron to be moved from Margaret's home to a community-based residential facility. Margaret defied that order until October 2011, when Aaron was finally removed from her home.

That July Margaret summoned the police when Aaron became violent and uncontrollable. Officers placed him in emergency detention, Wis. Stat. §51.15, and took him to the Milwaukee County Mental Health Complex. He stayed there for six days, over Margaret's objection—but with the consent of Life Navigators and Ruthmansdorfer.

Margaret has sued everyone who had anything to do with these events, invoking 42 U.S.C. §1983, the Fair Labor Standards Act, and the Medicare Act. The latter statutes have nothing to do with how guardians are selected, and neither statute gives a natural parent any right to supersede a decision made by a court-appointed guardian. The fourteenth amendment, enforced through §1983, guarantees Margaret the right to due process of law before state actors such as Milwaukee County can terminate parental rights. But parental rights end automatically at the age of a child's majority. To the extent that Margaret had a right to be *considered* as Aaron's guardian once he turned 18, the state judicial proceedings supplied all the process that was due.

Margaret attempts to advance legal claims belonging (or potentially belonging) to Aaron. She is a lawyer, but that is not enough; she is not *Aaron's* lawyer. Life Navigators and Ruthmansdorfer are the only persons authorized to act on his behalf. See *Struck v. Cook County Public Guardian*, 508 F.3d 858, 859 (7th Cir. 2007); *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007); *Navin v. Park Ridge School District*, 270 F.3d 1147, 1149 (7th Cir. 2001). They have not authorized this suit. Aaron therefore never has been a party, and we have removed his name from the caption.

Margaret can litigate to vindicate her own rights, but she cannot have a federal court appoint her as Aaron's guardian. That would directly upset a decision of the state court, and federal courts (other than the Supreme Court) lack the authority to review and countermand decisions of state courts in civil cases. See, e.g., *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Custody and guardianship decisions are open to change, but this does not make them less "final" for purposes of the *Rooker–Feldman* doctrine (or any other purpose). See *Restatement of Judgments* §13 and comment c (judgments granting relief in custody matters are "final" even though subject to revision). We therefore disagree with the district judge's conclusion that abstention is the appropriate response to this aspect of Margaret's claims. But as a practical matter nothing turns on this; the district judge did not reach the merits and thus complied with the *Rooker–Feldman* doctrine indirectly.

The *Rooker–Feldman* doctrine does not affect Margaret's claims against persons or entities that were not parties to the guardianship proceedings, see *Lance v. Dennis*, 546 U.S. 459 (2006), but the law of preclusion does. Federal courts must give state-court decisions the same preclusive force they have in state court. 28 U.S.C. §1738 ¶3. Wisconsin does not allow collateral attacks on guardianship or custody decisions through the expedient of suing someone else, in some other court. See, e.g., *In re Brianca M.W.*, 728 N.W.2d 652, 656–57 (Wis. 2007). Given §1738, therefore, the federal judiciary must take as established the validity of the orders appointing Life Navigators as Aaron's guardian and Ruthmansdorfer as his guardian ad litem. That makes all of Margaret's theories, state and federal, untenable. (She contends, for example, that she was forced into "slavery" by being compelled to provide Aaron's care. Yet until mid-2010 her care was voluntary, and after then she was *forbidden* to care for him but failed to honor the court's order.)

Margaret can ask the state court that entered the guardianship orders to modify them. She cannot obtain a modification in federal litigation, or obtain damages from persons who have carried out those orders or taken acts such as the six-day placement in July 2011 that depend on the validity of those orders.

                                                                                                                                   AFFIRMED