In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-3528

LOIS JONES,

*Plaintiff-Appellant,*

*v.*

THOMAS BRENNAN, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3285—**Charles R. Norgle, Sr.**, *Judge.*

_____

SUBMITTED JANUARY 4, 2006—DECIDED AUGUST 14, 2006

_____


Before POSNER, MANION, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* Lois Jones filed this suit pro se in federal court under 42 U.S.C. § 1983 against several Cook County, Illinois, probate judges, the county's public guardian, two of his deputies, and four private lawyers whom the probate court had appointed to be guardians *ad litem*. Jones claimed that the defendants had conspired to deprive her of property without due process of law in the course of probate proceedings involving her father's estate. Her father was living when the proceedings began, but was incapable of handling his affairs, apparently because of dementia and complications of diabetes, and so his property was in the

control of the probate court. He died in the course of the proceedings; they continued.

The complaint alleges that the probate judges received *ex parte* communications from the guardians, failed to require the guardians to file appearances or provide an accounting of their management of the estate, and denied the plaintiff notice and a hearing before replacing a previous guardian. The complaint further alleges that one of the guardians "bargain[ed]" with the plaintiff's siblings for property that should have remained in the estate, and conducted an "illegal search" of her personal belongings, and that the guardians prevented her from spending time with her father before he died by making false reports that convinced the court to grant an order of protection against her, and by hastening her father's death through neglect. She seeks compensatory and punitive damages.

The judge dismissed the suit on the pleadings on the authority of the *Rooker-Feldman* doctrine. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This was a mistake. The doctrine, which forbids a federal court other than the Supreme Court to entertain an appeal from a decision by a state court, is inapplicable when the plaintiff is not attacking a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291-94 (2005); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005). The plaintiff filed her suit before the litigation in state court over her father's estate was completed, and is complaining (so far as we can determine from the inartfully drafted pro se complaint), in part anyway, about matters that were not the subject of the state court judgment, such as the alleged bargaining between her siblings and the guardians, the

search, the denial of access to her father, and the defendants' actions that she contends hastened his death. To the extent that the *Rooker-Feldman* doctrine does not apply, the plaintiff's claims may be barred by res judicata, 28 U.S.C. § 1738, or the anti-injunction act, 28 U.S.C. § 2283, but these are defenses rather than jurisdictional obstacles and their applicability remains to be determined.

There is another jurisdictional obstacle to consider, however, and that is the "probate exception" to the federal courts' jurisdiction. See, e.g., *Storm v. Storm*, 328 F.3d 941, 943-44 (7th Cir. 2003); *Dragan v. Miller*, 679 F.2d 712, 713-15 (7th Cir. 1982). As recently clarified by the Supreme Court, the exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 126 S. Ct. 1735, 1748 (2006). The probate exception is usually invoked in diversity cases, and the courts are divided over its applicability to federal-question cases, such as this case. Compare *In re Marshall*, 392 F.3d 1118, 1131-32 (9th Cir. 2004), rev'd on other grounds under the name *Marshall v. Marshall*, *supra*, and *Tonti v. Petropoulos*, 656 F.2d 212, 215-16 (6th Cir. 1981), holding it applicable to such cases, with *Goerg v. Parungao*, 844 F.2d 1562, 1565 (11th Cir. 1988), holding it inapplicable. We think it applicable.

It used to be thought that the probate exception, like the domestic-relations exception, which denies federal jurisdiction to grant a divorce or exercise the other characteristic powers of a domestic-relations court, *Marshall v. Marshall*, *supra*, 126 S. Ct. at 1746; *Ankenbrandt v. Richards*,

504 U.S. 689, 703 (1992); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998), and is also usually invoked in diversity cases, was of constitutional dignity. *Byers v. McAuley*, 149 U.S. 608, 619-20 (1893); *Gaines v. Fuentes*, 92 U.S. 10, 21 (1876); *Case of Broderick's Will*, 88 U.S. 503, 509 (1875); cf. *Andrews v. Andrews*, 188 U.S. 14, 32-33 (1903) (domestic-relations exception). We echoed that view in *Dragan v. Miller*, *supra*, 679 F.2d at 714; see also *Akin v. Louisiana Nat'l Bank of Baton Rouge*, 322 F.2d 749, 751 (5th Cir. 1963); cf. *Loubser v. Thacker*, 440 F.3d 439, 440 (7th Cir. 2006) (domestic-relations exception). The thought was that Article III of the Constitution, in limiting the judicial power of the United States to cases and controversies, had confined the jurisdiction of the federal courts to "matters that were the traditional concern of the courts at Westminster." *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (Frankfurter, J., concurring). Probate and domestic relations were handled by the English ecclesiastical courts rather than by the royal courts (both the common law courts and the Chancery court) at Westminster. *Lloyd v. Loeffler*, 694 F.2d 489, 491 (7th Cir. 1982); *Csibi v. Fustos*, 670 F.2d 134, 136 (9th Cir. 1982); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3609, p. 460 (2d ed. 2006); see also 3 William Blackstone, *Commentaries on the Laws of England* 87-103 (1768).

The accuracy of this historical analysis has been questioned. See 13B Wright, Miller & Cooper, *supra,* at 491-92; cf. *Lloyd v. Loeffler*, *supra* (domestic-relations exception). The dominant modern view is that the exceptions are of statutory rather than constitutional origin (except insofar as some matters within the probate or domestic-relations jurisdictions do not involve disputes and therefore are not cases or controversies, *O'Callaghan v. O'Brien*, 199 U.S. 89, 106 (1905); *Ellis v. Davis*, 109 U.S. 485, 496-97 (1883); *Gaines v.*

*Fuentes*, *supra*, 92 U.S. at 21-22), and is agnostic about the accuracy of its remote historical underpinnings.

When Congress in the Judiciary Act of Sept. 24, 1789, § 11, 1 Stat. 73, conferred on the federal courts a diversity jurisdiction limited to "all suits of a civil nature at common law or in equity," which is narrower than Article III's definition of the federal judicial power, probate and domestic relations were, the courts interpreting the statute held, excluded because they were thought to be part of neither common law nor equity. *Marshall v. Marshall*, *supra*, 126 S. Ct. at 1746; *Lloyd v. Loeffler*, *supra*, 694 F.2d at 491; *Csibi v. Fustos*, *supra*, 670 F.2d at 136; 13B Wright, Miller & Cooper, *supra*, at 460. Congress used the same language when in the Judiciary Act of March 3, 1875, § 1, 18 Stat. 470, it conferred a general federal-question jurisdiction on the federal courts, by which time the probate and especially the domestic-relations exceptions had become established in the case law. E.g., *Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1859); *Case of Broderick's Will*, *supra*. The implication is that the exceptions were probably intended to apply to federal-question cases too. And there is no indication that the current formula in both jurisdictional statutes—"all civil actions," 28 U.S.C. §§ 1331, 1332(a)—was intended to repeal the exceptions. *Marshall v. Marshall*, *supra*, 126 S. Ct. at 1746; *Ankenbrandt v. Richards*, *supra*, 504 U.S. at 700-01; *Dragan v. Miller*, *supra*, 679 F.2d at 713.

There is no good reason to strain to give a different meaning to the identical language in the diversity and federal-question statutes. The best contemporary reasons for keeping federal courts out of the business of probating wills, resolving will contests, granting divorces and annulments, administering decedents' estates, approving child adoptions, and the like are two, and they are as persuasive when

a suit is filed in federal court on the basis of federal law as when it is based on state law. First, the proceedings we have listed, or at least those involving child custody and probate administration, are *in rem* in character—they are fights over a thing of value that is in the court's control—and another court should not try to elbow its way into the fight. Second, state courts are assumed to have developed a proficiency in these matters, to have procedures tailored to them, and to work closely with and even employ specialized staff not found in federal courts. *Ankenbrandt v. Richards*, *supra*, 504 U.S. at 703-04; *Lloyd v. Loeffler*, *supra*, 694 F.2d at 492; 13B Wright, Miller & Cooper, *supra*, at 461. This case, involving as it does a fight over an estate in the control of the state probate court, and the deployment of the public guardian, illustrates both points. See *Ankenbrandt v. Richards*, *supra*, 504 U.S. at 703-04. And since state courts are authorized to decide issues of federal law unless Congress decrees otherwise, confiding a class of federal-law cases to state courts does not deprive litigants of their federal rights.

Jones for the most part is complaining simply about the maladministration of her father's estate by the Cook County probate court, and this complaint, brought while the probate proceedings were in progress though they have since concluded, was tantamount to asking the federal district court to take over the administration of the estate. That clearly would violate the probate exception. *Marshall v. Marshall*, *supra*, 126 S. Ct. at 1748. But she is also accusing the guardians of having mismanaged the estate, and as an heir she may have a claim for breach of fiduciary duty by them. *Miller v. Rich*, 204 Ill. 444, 451-52 (1903); *Estate of Lis v. Kwiatt & Ruben, Ltd.*, 847 N.E.2d 879, 886-87 (Ill. App. 2006). Such a claim does not ask the court in which it is filed to administer the estate, but rather to impose tort liability on the guardians for breach of fiduciary duty. Although both

the public guardians and the guardians *ad litem* are agents of the probate court as long as they are acting at the court's direction, and so have to that extent absolute quasi-judicial immunity, e.g., *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005); *Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001); *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir. 1994), they can be sued if they step outside the scope of their agency and engage in self-dealing, as charged by the plaintiff. *Dornheim v. Sholes*, *supra*, 430 F.3d at 925; *Cok v. Cosentino*, 876 F.2d 1, 2-4 (1st Cir. 1989) (per curiam). In any event, immunity is a defense rather than a jurisdictional defect, although the grounds for dismissal in this case based on the probate exception and the immunity defense merge when guardians are acting within the scope of their authority *because* they are administering a probated estate.

But to establish federal jurisdiction it is not enough that the plaintiff's suit may not be entirely barred by the probate exception. The parties are not of diverse citizenship. The claim of breach of fiduciary duty clearly is based solely on state law. The plaintiff is also claiming, however, that the defendants deprived her of her property interest in her father's estate without due process of law. If they did this in the course of administering the estate, the claim cannot escape the gravitational pull of the probate exception. It is too facile a litigation move to recast a claim of maladministration as a denial of due process. But conceivably some of the alleged misconduct involving the plaintiff's claim to a share of her father's estate occurred outside the proceedings to administer the estate.

Another federal claim in the complaint is that the plaintiff was deprived, again without due process of law, of a liberty interest in her relationship with her father. We suggested in *Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005), that parents

and adult children have *some* constitutionally protected interest in being able to associate with each other. See also *Robertson v. Hecksel*, 420 F.3d 1254, 1258 (11th Cir. 2005) (collecting cases). But this claim may also be within the probate exception if, as appears from the complaint, the alleged interference was caused by a protection order that the guardians obtained to prevent the plaintiff from interfering with the probate proceedings.

As for the complaint about the search of the plaintiff's personal belongings, the legal basis of the claim is obscure but the search may have been conducted under a warrant issued by the probate court. In that event it would be state action that could be challenged under the Fourteenth Amendment as an unreasonable search and seizure—unless, once again, the warrant was ancillary to the administration of the estate "in the practical sense that allowing [the claim] to be maintained in federal court would impair the policies served by the probate exception." *Dragan v. Miller, supra,* 679 F.2d at 715-16. This we cannot tell from the complaint.

Though we are dubious that any of the plaintiff's federal claims are outside the probate exception, the matter is not so clear that the judgment dismissing the case on jurisdictional grounds can be sustained without further probing in the district court. Unsure that there is federal jurisdiction, we express no view of the merits of any of the claims but add that if there is at least one colorable federal claim not barred by the probate exception, the district court has jurisdiction over the plaintiff's state-law claims by virtue of the court's supplemental jurisdiction. 28 U.S.C. § 1367.

The judgment is vacated and the case remanded for further proceedings consistent with this opinion.

A true Copy:

      Teste:

                                _____

                                *Clerk of the United States Court of*
                                     *Appeals for the Seventh Circuit*