# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2420

JAMES T. STRUCK,

*Plaintiff-Appellant*,

*v.*

COOK COUNTY PUBLIC GUARDIAN,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 2980—**Rebecca R. Pallmeyer**, *Judge*.

_____

SUBMITTED OCTOBER 31, 2007—DECIDED NOVEMBER 26, 2007

_____

Before POSNER, WOOD, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff appeals from the dismissal of his suit, which the district court held was outside its jurisdiction. The complaint alleged that an Illinois state court had appointed a guardian for the plaintiff's mother because she was incompetent to manage her own affairs, and that the plaintiff had asked the court to revoke the guardianship because the guardian was abusing his mother, refusing to let him visit her, and denying him access to her records, mail, and assets. Turned down by the state court, he brought this suit in federal district court against the Cook County Public

Guardian, the public official who had designated the guardian of the plaintiff's mother. The suit charges violations of both the plaintiff's and his mother's federal constitutional rights.

The plaintiff is not his mother's guardian and therefore is not authorized to sue on her behalf; and to the extent that he is seeking appellate review in a federal district court (or in this court) of the decision by the Illinois state court, his suit is barred by the *Rooker-Feldman* doctrine. But his complaint, though none too clear (he does not have a lawyer), appears also to be claiming misconduct by the guardian that continued after the judgment in the plaintiff's unsuccessful state court suit.

And the plaintiff does have a claim on his own behalf—that the guardian is preventing him from seeing his mother and by doing so is depriving him of liberty protected by the due process clause of the Fourteenth Amendment, liberty that he argues includes the right of an adult child to associate with his parent. Whether the argument has merit has split the circuits, as explained in *Robertson v. Hecksel*, 420 F.3d 1254, 1258-60 (11th Cir. 2005), but remains an open question in this circuit. *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006); *Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005). We need not try to answer it in this case. For the preliminary question is whether the suit is barred by the doctrine that excepts from federal jurisdiction certain probate and domestic-relations cases, such as will contests, custody battles, and suits for divorce; and we think it is barred.

The exception is usually described as two exceptions, one for probate and one for domestic relations. But the two exceptions are materially identical. The fact that they are

two rather than one reflects nothing more profound than the legal profession's delight in multiplying entities.

In *Jones v. Brennan*, *supra*, 465 F.3d at 306-07, we pointed out that the exception originally was thought compelled by the phrase "judicial Power of the United States," in Article III of the Constitution. The federal judiciary was modeled on the three British royal courts at West-minster, and in Britain in the eighteenth century most domestic-relations and probate matters were consigned to other courts. But the modern understanding is that the exception, except insofar as it bars the federal courts from entertaining nonadversary proceedings, such as the uncontested appointment of a guardian or the uncontested probate of a will, which are not cases or controversies within the meaning of Article III, is based on a pragmatic interpretation of the statutes that give the federal courts jurisdiction over cases at law and in equity (the current term, covering both, is "civil actions," e.g., 28 U.S.C. §§ 1331, 1332). Such terms need not be interpreted to embrace all domestic-relations and probate matters, even if they are real cases. Typical adversary proceedings involving domestic relations or probate, such as child-custody proceedings and proceedings to resolve disputes over the administration of a decedent's estate (or as in this case and in *Jones* the estate of a living person who is incompetent to manage his affairs), are, like the nonadversary probate and domestic-relations proceed-ings, still *in rem* in character. That is, they are fights over a property or a person in the court's control. And a court other than the one that controls the *res*—the subject of the custody battle or the property in the decedent's estate—should not be permitted to elbow its way into such a fight. As the Supreme Court explained in *Marshall*

*v. Marshall*, 547 U.S. 293, 311-12 (2006) (citations omitted), "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res.* Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."

State courts, moreover, are assumed to have developed a proficiency in core probate and domestic-relations matters to have evolved procedures tailored to them, and some even employ specialized staff not found in federal courts. The comparative advantage of state courts in regard to such matters is at its zenith when the court is performing ongoing managerial functions for which Article III courts (as distinct from the Article I bankruptcy courts, specialists in *in rem* proceedings analogous to administering wills and supervising the custody of children and other legal incompetents) are poorly equipped. So the "exception" is akin to a doctrine of abstention.

The purpose of a legal doctrine frequently limits its scope, and this is true of the probate/domestic-relations exception. The plaintiff in *Jones v. Brennan* had charged a conspiracy between a guardian and others to violate her rights in the course of their administration of her father's estate. We ruled that such a suit could be litigated in federal court. The father had died and the probate of his estate had been completed, so that the plaintiff was not seeking to inject the federal court into the administration of the estate and wrest a *res* from the control of another

court, just as, in *Marshall v. Marshall*, a suit charging the plaintiff's stepson with tortious interference with her expectation of a bequest from her deceased husband, the plaintiff was seeking a judgment against the stepson personally, not against the estate.

This case is different. The *res*—the plaintiff's mother—is in the control of the guardian appointed by the state court, and decisions concerning the plaintiff's right of access to his mother and to her assets, her records, and her mail are at the heart of the guardian's responsibilities and are supervised by the court that appointed him. Unlike the plaintiff in *Jones*, our plaintiff is seeking to remove into the federal court the *res* over which a state court is exercising control. That is the sort of maneuver that the probate/domestic-relations exception is intended to prevent. The dismissal of the plaintiff's federal suit is therefore

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*