NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 30, 2015[*]
Decided March 30, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 14-1732

| | |
|---|---|
| BRIAN SHEETZ,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>FELICIA F. NORWOOD,[†]<br>Director of the Illinois Department of<br>Healthcare and Family Services, *et al.*,<br>    *Defendants-Appellees*. | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>Nos. 12 C 8477 & 12 C 8479<br><br>John A. Nordberg,<br>*Judge*. |

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

[†] Felicia F. Norwood replaced Julie Hamos as the Director of the Illinois Department of Healthcare and Family Services on January 20, 2015. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted Felicia F. Norwood for Julie Hamos.

**O R D E R**

As a child, Brian Sheetz was the subject of a drawn-out custody battle between his parents. In 2005, when he was 12 years old, a state court granted his father sole custody and strictly limited the mother's access to her son. The mother, Sheila Mannix, responded with a slew of unsuccessful state and federal lawsuits about the custody proceedings (and tangential matters). Sheetz, now an adult, appears to be following in his mother's footsteps: In 2012, he filed two related federal suits (which we have consolidated on appeal), naming a dozen defendants, including the Illinois Attorney General, the Director of the Illinois Department of Healthcare and Family Services, and a former police officer. His principal allegation in both actions is that the defendants violated federal and state laws by failing to protect him from alleged abuse by his father. The district judge presiding over the two lawsuits dismissed both for want of jurisdiction, concluding that the suits were barred by the *Rooker-Feldman* doctrine. We conclude that the doctrine does not apply here, but we affirm the judgment on the alternative ground that Sheetz's claims lack merit. We therefore modify the dismissals of his claims to be with prejudice.

Sheetz asserts several legal theories. He contends that the defendants failed to report and resolve the alleged abuse by his father, thereby violating the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5101, et seq., Title IV-D of the Social Security Act, 42 U.S.C. § 651, et seq., and Illinois's Abused and Neglected Child Reporting Act (ANCRA), 325 ILCS 5/1, et seq. Sheetz, who alleges that he has a "learning disability," further claims that the defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12132, though he does not say how. In addition, he accuses several police officers of unreasonably seizing him in violation of the Fourth and Fourteenth Amendments by returning him to his father's custody when Sheetz contravened the custody decree by visiting his mother. His complaint also includes allegations of conspiracy and a host of other state-law claims.

The defendants moved to dismiss on jurisdictional grounds and, alternatively, on the merits. They maintained that the *Rooker-Feldman* doctrine stripped the district court of subject-matter jurisdiction because, the defendants said, Sheetz's alleged injuries all stemmed from the state-court decisions related to the divorce and custody proceedings. And because Sheetz's "claims rest on his assertion that the state court orders granting custody to his father are void," the defendants contended, the domestic-relations exception also jurisdictionally barred the lawsuits. On the merits, the defendants argued

that Sheetz could not sue to enforce CAPTA, Title IV-D, or ANCRA because none of those statutes creates a private right of action, and that he failed to state a claim under the ADA because he did "not allege that he was excluded from any program, activity, or benefit *because of* his disability." Sheetz's claim of unlawful seizure likewise warranted dismissal, the defendants contended, because the police were reasonably enforcing a court order. And his remaining state-law claims, the defendants argued, were all legally baseless. Sheetz responded, among other things, that *Rooker-Feldman* did not apply because he was not a party to the state-court custody and divorce proceedings, and that the domestic-relations exception to federal jurisdiction was irrelevant because he was not attempting to litigate the divorce or custody proceedings in federal court.

The district judge ruled that the *Rooker-Feldman* doctrine barred Sheetz's lawsuits. The judge acknowledged that Sheetz was not a party to the state-court proceedings but concluded that the doctrine nonetheless applied because, the judge said, Sheetz's claims in federal court were "inextricably intertwined" with the state-court decisions.

On appeal, Sheetz maintains that the *Rooker-Feldman* doctrine does not apply to his lawsuits. He is correct. The *Rooker-Feldman* doctrine bars federal district and circuit courts from reviewing the decisions of state courts in civil cases. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The doctrine does not apply to lawsuits by persons who, like Sheetz, were not a party to the state-court proceeding. *See Lance v. Dennis*, 546 U.S. 459, 464–65 (2006); *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994). Moreover, the proper inquiry under the *Rooker-Feldman* doctrine is whether the plaintiff, having lost in state court, is seeking review of a state-court judgment that injured him, not whether the plaintiff's injury is somehow "intertwined" with that judgment. *See Saudi Basic Indus.*, 544 U.S. at 291–92; *Iqbal v. Patel*, No. 14-1959, 2015 WL 859541, at *2 (7th Cir. Mar. 2, 2015); *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014). Because Sheetz was not a party in state court and his injuries occurred out of court, *Rooker-Feldman* does not stand in his way.

The defendants contend that, even if *Rooker-Feldman* is inapplicable, the domestic-relations exception to jurisdiction (which is materially identical to the probate exception, *see Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 859 (7th Cir. 2007)) divested the district court of jurisdiction, but they are mistaken. The domestic-relations exception applies when a litigant asks a federal court to provide one of the unique forms of relief associated with domestic relations (e.g., a decree regarding divorce, alimony, or

child custody), *see Ankenbrandt v. Richards*, 504 U.S. 689, 706–07 (1992); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998), or when the issue raised by the litigant in federal court is ancillary to the domestic-relations proceedings in state court, *see Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006); *Friedlander*, 149 F.3d at 740. The defendants are correct that the domestic-relations exceptions would bar Sheetz from seeking to "void" the state court's custody orders. But although Sheetz refers to those orders as "void" throughout his complaint, he is principally attempting to litigate misconduct that occurred *outside* the state-court proceedings—the alleged failure of the defendants to report or otherwise end the alleged abuse inflicted on Sheetz by his father. He can pursue those claims without asking to set aside the state court's orders; his claims are analogous to the tort claims that the Supreme Court has held are not barred by either the domestic-relations or probate exceptions. *See Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *Ankenbrandt*, 504 U.S. at 704; *see also Struck*, 508 F.3d at 860.

Although Sheetz's claims are not jurisdictionally barred, a remand is unnecessary. We may affirm the district court's judgment on any ground that is supported by the record and that the appellees have not waived. *See Bennett v. Spear*, 520 U.S. 154, 166–67 (1997); *Bogie v. Rosenberg*, 705 F.3d 603, 614 n.2 (7th Cir. 2013). And we agree with the defendants' alternative argument that Sheetz's lawsuits should be dismissed on the merits.

We begin with the defendants' contention that Sheetz cannot bring claims for purported violations of Title IV-D and CAPTA because those statutes create no private right of action. Although the Supreme Court left open "the possibility that some provisions of Title IV-D give rise to individual rights," *Blessing v. Freestone*, 520 U.S. 329, 345 (1997), no court of appeals has ever concluded that a provision of the statute creates a private right of action, *see, e.g., Cuvillier v. Taylor*, 503 F.3d 397, 404–05 (5th Cir. 2007) (concluding that no federal right to child support payments was created by 42 U.S.C. §§ 651, 652(a)(1), (h), 654(4)(B), (13)); *Hughlett v. Romer-Sensky*, 497 F.3d 557, 562–63 (6th Cir. 2006) (rejecting plaintiff's argument that, read together, § 657(a)(3) and § 654b(c)(1) create private right); *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006) (holding that "§ 657 does not confer a private right to distribution of child support payments enforceable under § 1983"). Likewise, the federal courts of appeal that have considered the issue have uniformly rejected arguments that provisions of CAPTA create a private right. *See, e.g., Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 865–66 (D.C. Cir. 1996); *Tony L. ex rel. Simpson v. Childers*, 71 F.3d 1182, 1189–90 (6th Cir. 1995).

Sheetz gives us no reason to reach the contrary conclusion that Title IV-D and CAPTA create private rights. *See Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 901–02 (7th Cir. 1997). He does not respond to the defendants' arguments on this issue, nor does he make any attempt to "identify with particularity" any private right created by either Title IV-D or CAPTA. *Blessing*, 520 U.S. at 342; *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (explaining that "'rights-creating' language" in statute is "critical to showing the requisite congressional intent to create new rights").

Sheetz's remaining federal claims are also unavailing. He has never explained how he believes the defendants discriminated against him on the basis of a disability, and thus he fails to state a claim under the ADA. *See Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 874–75 (7th Cir. 2013). His claim of an unconstitutional seizure by the police likewise founders. According to Sheetz, when he was a minor he left the home of his father—who had sole custody over him pursuant to a court decree—and went to his mother's house. The police officers' simple act of returning him to his father's custody (no excessive force is alleged) was a reasonable execution of a court order and hence lawful under the Fourth Amendment. *See Xiong v. Wagner*, 700 F.3d 282, 289–90 (7th Cir. 2012); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000).

Rather than responding to the defendants' arguments regarding the merits of his claims, Sheetz advances three groundless contentions: (1) that the district judge violated his Seventh Amendment right to a jury trial by dismissing his lawsuit, (2) that the judge was biased against him, thus violating his right to due process, and (3) that the judge erred by not granting Sheetz's request for appointment of counsel. First, the dismissal of Sheetz's lawsuits was proper, and a proper dismissal of a lawsuit does not violate the Seventh Amendment. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 811 n.15 (7th Cir. 2009); *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 631 n.5 (5th Cir.), *cert. denied*, 135 S. Ct. 754 (2014). Second, Sheetz's dissatisfaction with the district judge's rulings does not alone establish a due-process violation. *See Antia-Perea v. Holder*, 768 F.3d 647, 661 (7th Cir. 2014). And third, Sheetz's argument that the judge erred by declining to recruit counsel fails because Sheetz has not shown how he was prejudiced by the denial. *See Gruenberg v. Gempeler*, 697 F.3d 573, 581–82 (7th Cir. 2012); *Mays v. Springborn*, 575 F.3d 643, 650–51 (7th Cir. 2009); *Pruitt v. Mote*, 503 F.3d 647, 659–60 (7th Cir. 2007) (en banc).

Finally, we turn to Sheetz's supplemental state-law claims. A federal court is authorized to reach the merits of a supplemental claim when the proper resolution of the claim is clear and no purpose is served in relinquishing jurisdiction. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251–52 (7th Cir. 1994); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Sheetz's state-law claims—like his federal claims—are meritless. His claim that the defendants violated Illinois's Abused and Neglected Child Reporting Act fails because, just like the federal statutes he attempts to privately enforce, the Act does not create a private right of action. *See Cuyler v. United States*, 362 F.3d 949, 954–55 (7th Cir. 2004); *Doe 1 ex rel. Tanya S. v. N. Cent. Behavioral Health Sys., Inc.*, 816 N.E.2d 4, 7–8 (Ill. App. Ct. 2004). Sheetz says nothing to counter the defendants' arguments that the rest of his state-law claims also are groundless, and our own examination of those claims confirms that they are untenable.

Because we conclude that all of Sheetz's claims fail on the merits, the district court's dismissal of the claims is modified to be with prejudice. *See Bovee v. Broom*, 732 F.3d 743, 744–75 (7th Cir. 2013). As so modified, the judgment of the district court is

AFFIRMED.